# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **RYAN JOEL EDWARD STINSON** | **CIVIL ACTION** |
| **VERSUS** | **NO. 12-0404** |
| **DANIEL EDWARDS, JOYCE JACKSON,** | **SECTION "R"(4)** |
| **BRANDON PINION, CHAD HICKEY,** | |
| **JOSHUA JACKSON, ERIC ANDREWS,** | |
| **MRS. PAM DOE, JEROD DOE** | |

## PARTIAL REPORT AND RECOMMENDATION

Before the court is a **Motion to Dismiss (Rec. Doc. No. 23)** filed by the defendants, Sheriff

Daniel Edwards, Warden Joyce Jackson, Assistant Warden Brandon Pinion, Sergeant Chad Hickey,

Deputy Joshua Jackson, Deputy Eric Andrews, Sergeant Pamela Ricard, and Deputy Gerard

Connerson, seeking dismissal of the plaintiff's complaint for failure to exhaust administrative

remedies prior to filing suit. Also before the Court are several motions filed by the pro se plaintiff,

Ryan Joel Edward Stinson ("Stinson"): (1) **Motion for Writ of Mandamus (Rec. Doc. No. 6)**; and

(2) **Motion for Temporary Restraining Order (Rec. Doc. No. 21)**.

The case and these motions were referred to a United States Magistrate Judge to conduct a

hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and

recommendations for disposition pursuant to **28 U.S.C. § 636(b)(1)(B) and (C), § 1915e(2), and**

**§ 1915A**, and as applicable, **42 U.S.C. § 1997e(c)(1) and (2)**. On March 8, 2012, the Court conducted a hearing pursuant to *Spears v. McCotter*,[1] and its progeny, with the plaintiff participating by conference telephone call.[2]

## I.    Factual Background

### A.    Original Complaint

Stinson is a pretrial detainee housed in the Tangipahoa Parish Jail ("TPJ"). Stinson filed this *pro se* and *in forma pauperis* complaint pursuant to 42 U.S.C. § 1983 against the defendants, Sheriff Edwards, Warden Jackson, Assistant Warden Pinion, Sergeant Hickey, Deputy Jackson, Deputy Andrews, Sergeant Ricard, and Deputy Connerson, alleging the improper use of excessive force against him on February 6, 2012.

Stinson alleges that, on February 6, 2012, Sergeant Ricard and Deputies Jackson, Andrews, and Connerson entered his cell and beat him. He claims that the officers told him that Warden Jackson and Assistant Warden Brandon Pinion told them to do it. He also alleges that the officers busted his lip and injured his right eye until it was swollen shut. They also injured his neck and caused numerous abrasions.

Stinson further states that he told Sergeant Hickey about the incident and that he was in pain. He claimed that he handed Sergeant Hickey a completed administrative grievance form. Stinson claims that Sergeant Hickey tore it up. The Sergeant also allegedly threatened to beat him and pushed him in the face.

---

[1]766 F.2d 179 (5th Cir. 1985). The purpose of the *Spears* Hearing is to ascertain what it is the prisoner alleges to have occurred and the legal basis for the claims. The information elicited at the hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e). *Wilson v. Barientos*, 926 F.2d 480, 482 (5th Cir. 1991).

[2]Rec. Doc. No. 15. The plaintiff was sworn prior to testifying. The hearing was digitally recorded.

As relief, Stinson requests that the officers involved be disciplined, that he be provided with medical attention, and that no retaliation be taken against him. He also seeks $1 million in damages for pain and suffering, and that costs be assessed to the defendants.

**B.**    **Supplemental Complaint**

In his supplemental complaint, Stinson alleged that since the filing of his original complaint, he was denied access to a law library, medical assistance, and due process, and he was beaten on February 24, 2012, by the defendants. He alleges that he was not given a disciplinary hearing regarding the disciplinary charges placed against him after the February 6, 2012 incident. He claims that Assistant Warden Pinion told him that he did not need to have a hearing, since he already received his punishment when he was beaten.

Stinson also alleges that, on February 24, 2012, Deputy Jackson and another deputy entered his maximum security cell, A-33, at around 6:10 a.m. and beat him for more than 20 minutes. This caused him to suffer severe pain, bruising and lacerations. Stinson claims that he tried to get another inmate to call his family for him, but the inmate was unable to do so. Later, between 10:00 a.m. and 11:00 a.m., Deputies Connerson and Jackson and two other deputies returned to his cell. These officers beat, kicked, and punched him in the body, face and head. They also shoved his face in the toilet stating that they would kill him. He claims that he suffered broken ribs and was blinded in his left eye. He also suffered lacerations to his head.

Stinson alleges that other inmates in cell A-2 saw what was going on, and they called his aunt, Mamie Slaughter. He claims that his aunt called his mother, Josephine Barlow, and his brother, Derrick Stinson. His family members tried to call the jail, but by that time the beatings had

stopped. He was left on the floor of his cell bleeding and in severe pain. He asked to be sent to a doctor, but his requests were refused.

Stinson further alleges that he remained in his cell from February 24 through February 27, 2012, when he was taken to the booking area for his insulin shot. The nurse noticed his face and asked what happened. She examined him and determined that his ribs were probably broken and confirmed that he could not see out of his left eye. She also told him that the lacerations to his head could not be stitched because too much time had passed. She told him he would have to wait to heal and she gave him ibuprofen. She also had him placed on suicide watch in cell E-17.

He remained there until March 7, 2012, during which time he did not receive any further medical attention. On that day, he was moved to maximum security for 60 days, and he was asked by Deputy Andrews to sign a disciplinary report regarding the incident on February 24, 2012. Stinson claims that he told the officer the contents of the report were fabricated. Deputy Andrews told him he was only there to get his signature and that he was not entitled to a disciplinary hearing or a copy of the disciplinary board report. Stinson alleges that he told Deputy Andrews that he wanted to appeal the disciplinary charge, and he was told that there was no appeal process. Stinson advised the deputy that he would send an appeal request to prison officials on a request form. Stinson also alleges that Deputy Andrews told him that he was not entitled to use the law library since he was not a DOC or federal prisoner.

As additional relief, Stinson requests that the deputies involved be disciplined, that he be moved to a safe facility, that he be granted a temporary restraining order to avoid harm and retaliation against him, and that he receive proper medical attention. He also requests $1 million for

pain and suffering and loss of vision in his left eye. He also asks that he be placed in protective custody in cell E-16.

## C. *Spears* **Hearing**

Stinson testified that he is a pretrial detainee awaiting trial on charges of burglary, theft and resisting arrest. He further stated that, on February 6, 2012, he was sharing a cell with Ralph Wood Jr. and Charles Williams. He stated that Williams began to beat on the cell door. One of the officers came to the cell to ask who was beating on the door. Stinson admits that he regularly engaged in such behavior, so the officer assumed it was he who had beaten on the door. He told the officer that it was not him, but the officer ordered him to pack his things. At this time, Deputy Andrews, Deputy Connerson, Warden Jackson, Deputy Dubroc, and Sergeant Ricard also came to the cell. Warden Jackson and Sergeant Ricard went out of the cell to talk Deputy Connerson and the others. Deputy Connerson returned to the cell and told Stinson to prepare for what was going to happen next. He called Deputy Jackson in and Jackson began to punch Stinson. The blood from the back of his head is still on the cell wall. Deputy Dubroc tried to get Jackson to stop, but Sergeant Ricard and Deputy Connerson urged Jackson to keep on beating him to teach him a lesson.

He was moved to maximum security. He claims that he told Sergeant Hickey about the incident and that he needed medical attention. Sergeant Hickey reportedly refused to help and pushed Stinson to the floor of the cell. Stinson stated that he thereafter filed an administrative grievance with the jail on the required form, and they refused to answer it. Instead, he received a copy of a disciplinary write-up against him from the February 6, 2012 incident. Stinson explained that "they" told him they would not answer his ARP complaint. He stated that the ARP system means simply that, when you filed a complaint, sometimes you get to talk to the sergeant and you

get an answer. Sometimes, they do not answer the complaint. In his case, he believes that the prison officials heard him ask Charles Williams, who was moved out of the cell later that day, to sign an affidavit as a witness about what happened. After he filed his ARP complaint form, he received a disciplinary board report charging him with defiance, disobedience and disrespect. The report was dated February 6, 2012, and was signed by Deputy Jackson. Stinson complained that he never went before a disciplinary board; he indicated that they do not do disciplinary hearings at the jail. The inmates just receive a write up and a sentence is imposed.

Stinson stated that Deputy Andrews is the head of security. He sued Andrews because he was present when Jackson beat him, and he did not try to intervene or stop it. He repeated that only Deputy Dubroc tried to stop Jackson.

Stinson sued Deputy Connerson, who was Shift Sergeant, who urged Jackson to keep punching him. Connerson also came back into the cell to tell Stinson that he was about to be beaten, and then he called Jackson in to beat Stinson. Sergeant Ricard, who was also present, was shift supervisor over Connerson. She also allegedly encouraged Jackson to continued beating Stinson.

Stinson stated that Deputy Dubroc told him that Assistant Warden Pinion and Warden Jackson instructed the deputies to beat Stinson anytime something happened. This is why Stinson sued these defendants.

Stinson also sued Sheriff Edwards, because he is the employer of the named defendants. He indicated that his brother tried to call the sheriff, and he refused to discuss anything with him. Stinson conceded that Sheriff Edwards did not do anything to cause the beating; he is named solely as the employer of the other defendants.

Stinson further testified that, on February 24, 2012, he was involved in another altercation with Deputies Connerson and Jackson and two other deputies. He claims that they showed up at his cell and beat him in the eye, chest, and head. As a result, he lost vision in his left eye from the blood that has accumulated in the eye. The nurse told him that his ribs were broken, but there was no treatment to do for it. He has not been taken for any other medical treatment.

He also claims that his family has tried to get him help and to find him a lawyer to no avail. He also claims that he tried to file an ARP about this incident, but "they" refused to accept it when he tried to hand it to them. He also stated that he has received disciplinary write-ups arising from the February 24 incident.

As relief, he stated that he wants protection for his life and compensation for his pain and suffering and for the loss of vision in his left eye.

## II.     Standards of Review

### A.     Appropriate Standard to Address Defendants' Motion

The defendants have filed their motion seeking relief pursuant to Fed. R. Civ. P. 12(b)(6). Rule 12, however, states that a motion raising defenses listed therein, including Rule 12(b)(6), "must be made ***before*** pleading if a responsive pleading is allowed." (emphasis added). The defendants have answered the original complaint. Thus, the Rule 12(b)(6) motion to dismiss is untimely. *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999).

Fed. R. Civ. P. 12(c), on the other hand, states that "[a]fter the pleadings are closed - but early enough not to delay trial - a party may move for judgment on the pleadings." The defendants have not filed a motion captioned as one seeking judgment on the pleadings nor have they invoked Rule 12(c). However, the Court may construe an untimely Rule 12(b)(6) motion as one for

judgment on the pleadings under Fed. R. Civ. P. 12(c). *Jones*, 188 F.3d at 324; Fed. R. Civ. P. 12(h)(2)(B); *see also*, *Quality Infusion Care Inc. v. Humana Health Plan of Texas, Inc.*, 290 Fed. Appx. 671 (5th Cir. 2008). In the interest of justice, the Court will construe the defendants' motion accordingly.

However, because the defendants have also presented affidavits and documentation with the motion that are outside of the pleadings already before the Court, the Court must address the motion as one seeking summary judgment under Fed. R. Civ. P. 56. In responding to the defendants' motion, the plaintiff has already presented affidavits and other exhibits appropriately considered under Fed. R. Civ. P. 56.

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Lindquist v. City of Pasadena, Tx.*, 669 F.3d 225, 233 (5th Cir. 2012) (quoting *Travelers Lloyds Ins. Co. v. Pac. Emp'rs Ins. Co.*, 602 F.3d 677, 681 (5th Cir. 2010)). The Court's task is not to resolve disputed issues of fact, but to determine whether there exists any factual issues to be tried. *See Andersen v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-49 (1986); *Lindquist*, 669 F.3d at 233 (quoting *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008)). In making this determination, all of the facts must be viewed in the light most favorable to the non-moving party. *Id*., 477 U.S. at 248; *Lindquist*, 669 F.3d at 233 (*Frakes v. Crete Carrier Corp.*, 579 F.3d 426, 429-30 (5th Cir. 2009)).

The moving party bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which it believes demonstrate the absence

of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Once the moving party carries its burden of proving that there is no material factual dispute, the burden shifts to the nonmovant to show that summary judgment should not lie. *Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 991 (5th Cir. 2001); *Hopper v. Frank*, 16 F.3d 92, 96 (5th Cir. 1994). While the court must consider the evidence with all reasonable inferences in the light most favorable to the nonmovant, the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial. *See Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). This requires the nonmoving party to do "more than simply show that there is some metaphysical doubt as to the material facts." *Id.*

Instead, the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue of fact for trial." *Celotex Corp*, 477 U.S. at 324. If the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *See Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1085 (5th Cir. 1994).

### B.     Frivolousness

Title 28 U.S.C. §§ 1915A and Title 42 U.S.C. §§ 1997e(c) require the Court to *sua sponte* dismiss cases filed by prisoners proceeding *in forma pauperis* upon a determination that they are frivolous. The Court has broad discretion in determining the frivolous nature of the complaint. *See Cay v. Estelle*, 789 F.2d 318 (5th Cir. 1986), *modified on other grounds*, *Booker v. Koonce*, 2 F.3d 114 (5th Cir. 1993). However, the Court may not *sua sponte* dismiss an action merely because of questionable legal theories or unlikely factual allegations in the complaint.

Under this statute, a claim is frivolous only when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319 (1989); *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998). A claim lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist. *Harper v. Showers*, 174 F.3d 716, 718 (5th Cir. 1999). It lacks an arguable factual basis only if the facts alleged are "clearly baseless," a category encompassing fanciful, fantastic, and delusional allegations. *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992); *Neitzke*, 490 U.S. at 327-28. Therefore, the Court must determine whether the plaintiff's claims are based on an indisputably meritless legal theory or clearly baseless factual allegations. *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994); *see Jackson v. Vannoy*, 49 F.3d 175, 176-77 (5th Cir. 1995); *Moore v. Mabus*, 976 F.2d 268, 269 (5th Cir. 1992).

III.     **Defendants' Motion to Dismiss (Rec. Doc. No. 23)**

   A.     **Defendants' Arguments In Support**

Defendants have filed a motion seeking dismissal of Stinson's claims for failure to exhaust state court remedies. Defendants allege that Stinson is a disruptive inmate who has received numerous disciplinary reports and has required several moves within the prison as a result of his inappropriate behavior. With regard to the two incidents involved in his complaints, the defendants argue that Stinson did not exhaust all of the administrative remedies available at the prison. Defendants argue in the motion that TPJ has an Offender Grievance Procedure which requires the inmate to request a form to present his grievances. The inmate is reportedly to forward the completed form to the Jail Administrator, Captain Stuart Murphy.

Defendants have presented the affidavit of Captain Murphy who indicates that he is the Jail Administrator charged with receiving inmate grievances pursuant to the Offender Grievance Procedure at TPJ.[3] He attests that Stinson has not filed any inmate grievances with him or any other employee at the TPJ.

The defendants have also provided copies of Stinson's extensive criminal record, cell to cell move sheets, an unusual occurrence report dated February 6, 2012, and several disciplinary reports with respective attachments, one dated January 28, 2012, two dated February 6, 2012, three dated February 24, 2012, one dated February 26, 2012.

In a reply filed by defendants in response to Stinson's opposition, the defendants argue that Stinson's representations that he has exhausted are false.[4] The defendants re-urge that Stinson did not file the grievance form attached to his opposition or any other form with Captain Murphy or any other employee at TPJ. The defendants suggest that Stinson would have presented the Court with a copy of the filed grievance form rather than an original of the "Emergency Administrative Remedy Procedure" dated February 6, 2012, submitted with his opposition.

With the reply, defendants have submitted a second affidavit from Captain Murphy in which he attests that Stinson did not file a document entitled "Emergency Administrative Remedy Procedure" with him or anyone else at TPJ.[5] He also declares that he had never seen the document prior to May 3, 2012, which was after the pleading was filed with this Court.

---

[3]Rec. Doc. No. 23-2, Exhibit 1.

[4]Rec. Doc. No. 29.

[5]Rec. Doc. No. 29-1.

B.        **Stinson's Argument in Opposition**

Stinson argues that the defendants' motion should be denied, because there remain genuine issues of material fact about what occurred on February 6, 2012 and February 24, 2012 and as to whether he filed a grievance form.[6]  He also claims that, after the defendants left his cell following the beating on February 6, 2012, he and his cellmate, Ralph Wood Jr., wrote an administrative grievance form which they turned into Deputy Connerson the next day.

In support of his opposition, Stinson presents his own unverified and un-notarized affidavit setting forth genuine issues of fact to be resolved addressing only the substance of the excessive force claims he raised.[7]  He also submits a handwritten fill-in the blank affidavit which is not notarized and which is purportedly signed by "Robert T. Wood Jr."[8]  The affidavit, dated February 18, 2012, suggests that Wood claims that he helped Stinson filed a grievance form to which the administration never responded.  The affidavit does not bear an inmate number or cell number for the Wood.

Stinson also attaches a handwritten document entitled "Emergency Administrative Remedy Procedure" dated February 6, 2012, which Stinson claims in his opposition was submitted to prison officials as an administrative grievance.  In response to the defendants' suggestion that this document was never submitted to prison officials, Stinson argues that the defendants have not presented an affidavit from Deputy Connerson, to whom the grievance was given.[9]  He also argues that he was not able to get a copy of his submitted document, and had to hand write a copy for later

---

[6]Rec. Doc. No. 25.

[7]Rec. Doc. No. 25, pp. 6-7.

[8]Rec. Doc. No. 25-1.  A copy of this affidavit is also attached to other pleadings filed here by Stinson.

[9]Rec. Doc. No. 32.

use.  He further contends that, when he did not receive a response from the prison officials, he had no choice but to file suit.

Stinson has also submitted an affidavit, presented under penalty of perjury that he hand wrote two grievance complaints on February 6, 2012.[10]  He attests that he gave one original to Deputy Connerson, and he does not know what the deputy did with it.

## C.    The Exhaustion Requirement

The Prison Litigation Reform Act ("PLRA") as codified at 42 U.S.C. § 1997e(a) requires that prisoners must properly exhaust "such administrative remedies as are available" prior to filing a § 1983 complaint related to prison conditions.  *Woodford v. Ngo*, 548 U.S. 81, 83-84 (2006).  Specifically, § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  *Days v. Johnson*, 322 F.3d 863, 866 (5th Cir. 2003), *overruled by implication on other grounds by Jones v. Bock*, 549 U.S. 199, 214-15 (2007).  The State of Louisiana has a similar requirement before suit can be filed in the state courts. La. Rev. Stat. Ann. § 15:1184(A)(2).

Exhaustion under the PLRA is an affirmative defense and is a threshold issue that courts must address to determine whether litigation is being conducted in the right forum at the right time. *Dillon v. Rogers*, 596 F.3d 260, 272 (5th Cir. 2010); *see also, Jones v. Brock*, 549 U.S. 199, 216 (2007) (concluding that exhaustion under the PLRA is an affirmative defense).  As a result, the trial court may resolve factual disputes concerning exhaustion without the participation of a jury.  *Id.*

---

[10]Rec. Doc. No. 32-1, pp. 8-9.

The court does not "inquire whether administrative procedures satisfy minimum acceptable standards of fairness and effectiveness;" prisoners simply "must exhaust such administrative remedies as are available, whatever they may be." (citations and internal quotation marks omitted) *Alexander v. Tippah County, Miss.*, 351 F.3d 626, 630 (5th Cir. 2003). The Supreme Court has held that the exhaustion requirement mandates "proper exhaustion," which means compliance with prison procedural rules and deadlines. *Woodford*, 548 U.S. at 92-93. Furthermore, substantial compliance with administrative procedures is insufficient to permit pursuit of a federal lawsuit. *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001). Unless the prisoner pursues his "grievance remedy to conclusion," he has not exhausted "available remedies." *Id.*

Thus, exhaustion does not merely require the plaintiff to initiate the prescribed administrative procedures, but also to pursue them to their appropriate conclusion and await their final outcome before seeking judicial intervention. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Clifford v. Gibbs*, 298 F.3d 328, 330 (5th Cir. 2002). Exhaustion must be completed within the state system to allow the federal courts to take cognizance of the prisoner's claim. *Underwood v. Wilson*, 151 F.3d 292, 295 (5th Cir. 1998), *overruled by implication on other grounds by Jones*, 549 U.S. at 213-15. When a prisoner fails to exhaust his administrative remedies prior to filing suit without a valid excuse, a court properly dismisses the action without prejudice to its refiling after the prisoner exhausts his administrative remedies. *See Wendell v. Asher*, 162 F.3d 887, 890-91 (5th Cir. 1998). In addition, a prisoner is required to exhaust his administrative remedies even if damages are unavailable through the grievance process. *Booth v. Churner*, 532 U.S. 731, 734 (2001); *Wright*, 260 F.3d at 358.

## D.  Discussion

As a preliminary manner, the Court must consider the TPJ  grievance procedure and any steps required therein to determine whether Stinson complied with that procedure before he filed this lawsuit.  The evidence submitted by the defendants, however, fails to describe or delineate the steps required by the TPJ Offender Grievance Procedure.  Captain Murphy's affidavit establishes that part of his job is to receive inmate grievances pursuant to the Offender Grievance Procedure.[11]  The affidavit provides absolutely no information or description of that procedure, including what the inmate is required to do, how the Captain receives the grievances, and/or how many steps are involved/required in order to complete the procedure.  The Court has no way to determine how the procedure works or what Stinson was supposed to do that was not done.  In other words, the Court cannot determine from the summary judgment evidence what was required for Stinson to initiate the procedure and bring it to a conclusion before filing this suit.  *Accord Porter*, 534 U.S. at 532 (requiring completion of each step or requirement); *Clifford*, 298 F.3d at 330 (same).

On the other hand, Stinson has averred that he prepared a handwritten grievance complaint about the February 6, 2012, incident which he attempted to submit to prison officials.  He contends that he submitted the form, and the prison officials failed to respond or, under a broad reading, in some way interfered with the filing process.  This is sufficient to create an issue of fact, especially since the Court has nothing to counter his suggestion that something was handed to Hickey and/or Connerson.

The Court is well aware that Stinson's claims regarding his efforts to submit that form are at best inconsistent.  For example, in one pleading, Stinson alleged that he prepared a grievance form

---

[11]Rec. Doc. No. 23-2.

about the February 6, 2012, incident which was torn up by Sergeant Hickey. At the *Spears* Hearing, he claimed at one point that Sergeant Hickey tore it up and at another point later stated that Hickey refused to take it from him.

At the same hearing and in his later pleadings, in which he wholly fails to mention giving a form to Sergeant Hickey, Stinson claimed that he completed the "required form" and handed it to Deputy Connerson the next day. In an effort to support this allegation, Stinson presents a handwritten complaint, not a completed prison "required form," which he now claims is a duplicate of what he gave to Deputy Connerson.

While the Court questions the credibility of Stinson's claims that he submitted anything to the prison, the allegations create a question of fact that cannot be resolved based on the information presently before the Court. More importantly, the defendants have not presented competent summary judgment evidence establishing the procedures Stinson was to follow or refuting his suggestion that he attempted to give documents to Hickey and/or Connerson.

Although Captain Murphy attests in his affidavits that nothing was given to any other employee, he does not demonstrate how this information falls within his personal knowledge. Rule 56 of the Federal Rules of Civil Procedure sets out the standards for summary judgment and generally requires that supporting evidence be competent. *Accord Stingley v. Den-Mar Inc.*, 347 Fed. Appx. 14 (5th Cir. 2009). Specifically, Rule 56(c)(4) requires that summary judgment affidavits "must be made on personal knowledge, set out facts as would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." (emphasis added) Fed. R. Civ. P. 56(c)(4). It is well settled in the Fifth Circuit that "[s]tatements made on information and belief do not constitute proper summary judgment evidence." *de la O v. Housing Auth. of City*

*of El Paso, Tx.*, 417 F.3d 495, 502 (5th Cir. 2005); *Bolen v. Dengel*, 340 F.3d 300, 313 (5th Cir. 2003); *Richardson v. Oldham*,, 1378 (5th Cir. 1994) (instructing that statements "based on information and belief . . . [are] struck as not based on personal knowledge and therefore fail[ ] the requirements of Fed. R. Civ. P. 56(e)"[12]).  The Captain's affidavits do not meet this standard with regard to his statements that nothing was given to other employees.

Thus, there is nothing in this record to refute Stinson's suggestion that he attempted to present something to the prison officials about the February 6, 2012, incident to which they did not respond.  Since the Court also has no information as to what other steps Stinson should have exercised, the defendants' motion must fail.

The Court, on the other hand, finds that Stinson has presented nothing to refute the defendants' argument that he failed to exhaust administrative remedies with respect to the new claims raised in his supplemental complaint, denial of access to the law library, denial of medical care and excessive force arising from the February 24, 2012 incident.  Stinson does not argue that he did, and he does not submit any competent evidence to suggest that he did.  For this reason, the Court finds that Stinson has conceded his failure to exhaust administrative remedies with respect to the February 24, 2012, incident addressed in his supplemental complaint.  Thus, the defendants' argument that he never filed anything with respect to this incident is not challenged, and they are entitled to dismissal of those claims as a matter of law.

Where an inmate fails to exhaust only some of the claims raised, the Court should dismiss the unexhausted claims and proceed with exhausted claims.  *Jones*, 549 U.S. at 219-224.  The Court will therefore recommend that defendants' motion be denied without prejudice with respect to the

---

[12]Fed. R. Civ. P. 56(e) was amended to move the affidavit requirement to Fed. R. Civ. P. 56(c)(4).

excessive force claims arising out of the February 6, 2012 incident, and granted as to Stinson's supplemental claims of denial of access to a law library and the denial of medical care and excessive force claims arising from the February 24, 2012 incident, which should be dismissed without prejudice for failure to exhaust.

## IV.    Review for Frivolousness of Remaining Claims

Having made the preceding findings and recommendations, the Court will proceed to its statutory frivolousness review of the remaining claims, all of which arise from the February 6, 2012 incident only. Having reviewed all of the claims, the Court finds that the following claims are frivolous.

### A.    Sheriff Daniel Edwards

Stinson has sued Sheriff Edwards as the employer of the other defendants. He conceded in his *Spears* Hearing testimony that this was the sole basis for his claims against Sheriff Edwards and that Sheriff Edwards did not play a role in alleged use of force on February 6, 2012. His claims against Sheriff Edwards are frivolous and should be dismissed.

Supervisory officials cannot be held liable pursuant to § 1983 under any theory of respondeat superior simply because an employee or subordinate at the prison allegedly violated the plaintiff's constitutional rights. See *Alton v. Tex. A&M Univ.*, 168 F.3d 196, 200 (5th Cir. 1999); see also *Baskin v. Parker*, 602 F.2d 1205, 1220 (5th Cir. 1979). Supervisory officials may only be liable under § 1983 if they "[were] personally involved in the acts causing the deprivation of his constitutional rights or a causal connection exists between an act of the official and the alleged constitutional violation." *Douthit v. Jones*, 641 F.2d 345, 346 (5th Cir. 1981); *Smith v. Brenoettsy*, 158 F.3d 908, 911 (5th Cir. 1998) (citing *Sims v. Adams*, 537 F.2d 829, 831 (5th Cir. 1976)); see also

*Watson v. Interstate Fire & Cas. Co.*, 611 F.2d 120 (5th Cir. 1980). This personal involvement also must include a showing of deliberate indifference which is necessary to establish a violation of the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 847 (1994); *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998).

Stinson conceded at the *Spears* Hearing that Sheriff Edwards was not present for, or personally involved in, the incident about which he complains. Stinson also has not alleged that the incident about which he complains was the result of any directive, supervised training or activity, or other policy set forth by the Sheriff Edwards personally which could create vicarious liability. See *Thompson v. Upshur Cnty.*, 245 F.3d 447, 459 (5th Cir. 1991); *Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992); see also *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124-25 (1988); *Bennett v. Pippin*, 74 F.3d 578, 586 (5th Cir. 1996). As a result, the claims against Sheriff Edwards are frivolous and should be dismissed pursuant to § 1915(e), § 1915A, and § 1997e.

## B.     Sergeant Chad Hickey

Stinson claims that sometime after he was beaten by the other deputies, he complained about the incident and his pain to Sergeant Hickey. As noted above, at some points, he also claims that Sergeant Hickey tore up his grievance form and/or refused to take it. He also claims that Hickey threatened to beat and then pushed him, causing him to fall to the floor of his cell.

An excessive force claim by a pretrial detainee is governed by the Due Process Clause of the Fourteenth Amendment. *Bell v. Wolfish*, 441 U.S. 520, 535-539 (1979); *Brothers v. Klevenhagen*, 28 F.3d 452, 455-56 (5th Cir. 1994) (citing *Valencia v. Wiggins*, 981 F.2d 1440, 1443-45 (5th Cir. 1993)); *see also*, *Edwards v. Loggins*, __ F.3d __, 2012 WL 1758162, at *1 (5th Cir. May 16, 2012) ("As a pretrial detainee, [plaintiff's] constitutional rights were derived from the Fourteenth

Amendment.") (citing *Hare v. City of Corinth, Ms.*, 74 F.3d 633, 639 (5th Cir. 1996)).  Although

convicted prisoners are protected against excessive force under a different constitutional provision

(the Eighth Amendment), it is well established that the same standard and protection apply to both

pretrial detainees and convicted prisoners when the claim involves excessive force used to restore

institutional order.  *See Valencia*, 981 F.2d at 1446 (adopting test for Eighth Amendment excessive

force claims for pretrial detainee's excessive force claim under Fourteenth Amendment Due Process

Clause because "it is impractical to draw a line between convicted prisoners and pretrial detainees

[in the context of an excessive force claim] for the purpose of maintaining jail security"); *see also*,

*e.g.*, *Jackson v. Culbertson*, 984 F.2d 699, 700 (5th Cir.1993) (per curiam) (holding that standard

under Eighth Amendment and Due Process Clause is the same).

   The question under this analysis is whether the force was applied in a good faith effort to

maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm

to the inmate.  *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992); *Valencia*, 981 F.2d at 1446.  Although

this test is subjective, there is often no evidence of the subjective intent.  In that case, the trier of fact

should consider certain objective factors in making this determination:

> 1.    The extent of the injury suffered;
> 2.    The need for the application of force;
> 3.    The relationship between the need and the amount of force used;
> 4.    The threat reasonably perceived by the responsible officials; and
> 5.    Any efforts made to temper the severity of the forceful response.

*Valencia*, 981 F.2d at 1446 & n. 29.

   In assessing these factors, the Court must consider the wide-ranging deference given to the

prison official in making quick and decisive decisions in a volatile situation.  *Id.*, 981 F.2d at 1446;

*Baldwin v. Stalder*, 137 F.3d 836, 840 (5th Cir. 1998).  In addition, although a showing of

"significant injury" is not necessary, the Fifth Circuit requires that the plaintiff have suffered at least some form of injury that is more than *de minimis*. *Galada v. Payne*, 421 Fed. Appx. 460, 462 (5th Cir. 2011) (citing *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001)). It is well settled that not every "malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson*, 503 U.S. at 9.

In this case, Stinson does not allege that he suffered any injury at the hands of Sergeant Hickey on February 6, 2012. To the extent he may intend to assert that the shove by Sergeant Hickey caused him additional pain, such a non-specific assertion of injury is considered *de minimis*. *See Haddix v. Kerss*, 203 Fed. Appx. 551, 554 (5th Cir. 2006) (citing *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997) (finding sore ear lasting for three days constituted a *de minimis* injury) and *Alexander*, 351 F.3d at 631 (temporary nausea was, at most, *de minimis* injury)). Having failed to assert a basis for the Court to consider the force used to be excessive, Stinson claims against Sergeant Hickey are frivolous. The lack of more than a *de minimis* injury would also preclude Stinson's recovery for mental or emotional damages. *See* 42 U.S.C. § 1997e(e); *Geiger v. Jowers*, 404 F.3d 371, 374-75 (5th Cir. 2005).

The Court also finds that no other allegations against Sergeant Hickey rises to the level of a constitutional violation. An inmate's claims of verbal insults, threats and derogatory remarks are not cognizable under § 1983. *Robertson v. Plano City*, 70 F.3d 21, 24 (5th Cir. 1995). The Fifth Circuit has stated that "'mere threatening language or gestures of a custodial officer do not, even if true, amount to constitutional violations.'" (citation omitted) *Id.*; *accord Watson v. Winborn*, 67 Fed. Appx. 241, 241 (5th Cir. 2003); *Calhoun v. Hargrove*, 312 F.3d 730, 734 (5th Cir. 2002); *Vessell v. Gusman*, No. 06-2294, 2006 WL 2067723, at *2 (E.D. La. July 19, 2006) (McNamara, J.)

(citing *Calhoun*, 312 F.3d at 734; *Siglar*, 112 F.3d at 193; *Bender v. Brumley*, 1 F.3d 271, 274 n.4 (5th Cir. 1993)).  It also is well settled that "[c]laims of hurt feelings, humiliation, and other heartfelt, yet objectively trivial indignities, are not of Constitutional moment. . . ."  *Jackson v. Liberty County*, 860 F. Supp. 360, 363 (E.D. Tex. 1994).

In this case, Stinson's allegations of verbal threats do not rise to the level of a constitutional violation.  These claims, and those of excessive force, against Sergeant Hickey should be dismissed with prejudice as frivolous and for failure to state a claim for which relief can be granted pursuant to § 1915(e), § 1915A, and § 1997e.

## V.      Plaintiffs' Remaining Motions

Stinson has filed pretrial motions seeking mandamus and injunctive relief.  For the following reasons, both of his motions should be denied.

### A.      Motion for Writ of Mandamus (Rec. Doc. No. 6)

Stinson filed a Motion for Writ of Mandamus seeking an order from this Court to have his complaints that he was beaten by the defendants referred to the Tangipahoa Parish District Attorney Scott Perilloux.  Stinson motion should be denied for lack of jurisdiction to grant such relief.

Federal district courts are courts of limited statutory jurisdiction which can not hear claims without jurisdiction conferred by a statute.  *See Dunn-McCampbell Royalty Interest, Inc. v. National Park Service*, 112 F.3d 1283, 1286 (5th Cir. 1997); and *Veldhoen v. U.S. Coast Guard*, 35 F.3d 222, 225 (5th Cir. 1994).  The only federal statute conferring upon federal district courts the authority to issue writs of mandamus is 28 U.S.C. § 1361, which specifically provides that "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel *an officer or employee of the United States or any agency thereof* to perform a duty owed to the plaintiff."

(emphasis added) *see Dunn-McCampbell Royalty Interest, Inc.*, 112 F.3d at 1288 (quoting 28 U.S.C. § 1361). The defendants in this case are not federal officers. District Attorney Perilloux, who is not a party, also is not a federal officer, agent or employee, and instead is an elected official for Tangipahoa Parish, Louisiana. The defendants and Mr. Perilloux are not subject to the statutory mandamus authority of this Court. Thus, this Court lacks jurisdiction to entertain the plaintiff's request for mandamus relief. His Motion for Writ of Mandamus must be denied.

### B.    Motion for Temporary Restraining Order (Rec. Doc. No. 21)

Stinson has filed a motion seeking a temporary restraining order seeking an order from this Court directing the defendants, Deputy Jackson, Deputy Connerson, and Sergeant Ricard, to refrain from further harassment and retaliation against him for seeking redress in this Court. Specifically, he claims that on April 7, 2012, these defendants appeared at his cell H+E-15 and ordered him to pack his things to be moved to a maximum security. He claims that told him he was being moved because he sued them.

Stinson further alleges that when he was brought to maximum security, they tried to place him in a cell with Richard Boils, his known enemy. The defendants then took him to suicide watch and left his personal belongings in the cell with Boils. He was taken to cell E-17 around 9:30 or 10:00 a.m. and was placed on suicide watch. They allegedly left him shackled and in handcuffs with waist chains. He claims that they would return periodically to taunt him and ask if he was ready to drop his suit. By that evening, they finally removed the shackles and restraints.

Stinson also claims that later that day, Deputy Connerson threatened to kill him if he did not drop this suit. He was later moved back to his regular cell after he spoke with Sergeant Hickey, who

also had his personal belongings returned to him. Stinson claims that he is scared for his life and needs protection from the defendants.

A temporary restraining order may only be granted under Fed. R. Civ. P. 65(b) if there is: (1) a substantial likelihood of success on the merits; (2) a substantial threat that the movant will suffer irreparable injury if the injunctive relief is denied; (3) the threatened injury to the movant outweighs the harm the injunction will cause on the opponent; and (4) the injunctive relief will not do disservice to the public interest. *EEOC v. Cosmair, Inc.*, 821 F.2d 1085, 1088 (5th Cir. 1987); *Bergquist v. FYBX Corp.*, No. 02-722, 2003 WL 21488117, at *1 (E.D. La. 2003) (Vance, J.).

Furthermore, Fed. R. Civ. P. 65(b) also provides that the Court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only when "(A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required."

In the instant case, Stinson has failed to meet the requirements under Fed. R. Civ. P. 65. He has not alleged any specific facts to show that immediate and irreparable injury, loss, or damage will result to him in the future if the order is not issued. He has only alleged that he has received verbal threats and incidents of restraint and cell change which are common place in prison institutions. Nothing he alleges in the motion rises to the level of a compensable constitutional violation. *Accord Robertson*, 70 F.3d at 24 (verbal threats are not cognizable under § 1983); *Madison v. Parker*, 104 F.3d 765, 768 (5th Cir. 1997) (sanctions that are "merely changes in the conditions of [an inmate's] confinement" do not implicate due process concerns.).

More significantly, Stinson has not credibly established the likelihood of success on the merits of his underlying claims. The defendants' pleadings indicated that Stinson is a recalcitrant inmate with extensive disciplinary charges (unrelated to the two he complains of) and with an extensive and violent criminal history. At the *Spears* Hearing, Stinson also conceded that he has engaged in disruptive and inappropriate behavior, including beating on cell doors.

In addition, nothing Stinson complains of is beyond reparation by monetary compensation. A restraining order should only be issued when "a substantial threat of harm to the movant . . . cannot be compensated by money." *Harvey Barnett, Inc. v. Shidler*, 143 F. Supp.2d 1247, 1255 (D. Col. 2001). Stinson's claims involve only temporary physical injuries, including his alleged eye injury. All of these damages can be compensated by monetary relief if proven.

Considering the record, Stinson has failed to establish the need for issuance of a temporary restraining order. Stinson has not presented any well-pleaded facts to show, or facts from which it can be inferred, that irreparable harm has occurred or is likely to occur. Furthermore, any injury he has or may sustain for which the defendants are liable can be compensated monetarily. The motion should be denied.

## VI.    Recommendation

It is therefore **RECOMMENDED** that the defendants' **Motion to Dismiss (Rec. Doc. No. 23)** be **DENIED in part without prejudice** with respect to Stinson's 42 U.S.C. § 1983 claims of excessive force, failure to protect, and denial of medical care arising out of the February 6, 2012 incident, and **GRANTED in part** with respect to Stinson's supplemental claims of denial of access to a law library and excessive force and denial of medical care arising from the February 24, 2012

incident and **DISMISSING** those claims **WITHOUT PREJUDICE** for failure to exhaust administrative remedies as required by 42 U.S.C. § 1997e.

It is further **RECOMMENDED** that Stinson's § 1983 claims against Sheriff Daniel Edwards and Sergeant Chad Hickey be **DISMISSED WITH PREJUDICE** as frivolous and for failure to state a claim for which relief can be granted pursuant to 28 U.S.C. § 1915(e), § 1915A, and 42 U.S.C. § 1997e.

It is further **RECOMMENDED** that Stinson's **Motion for Writ of Mandamus (Rec. Doc. No. 6)** and **Motion for Temporary Restraining Order (Rec. Doc. No. 21)** be **DENIED**.

Stinson's § 1983 claims including excessive force, failure to protect, and denial of medical care arising from the February 6, 2012, incident against Warden Joyce Jackson, Assistant Warden Brandon Pinion, Deputy Joshua Jackson, Deputy Eric Andrews, Sergeant Pamela Ricard, and Deputy Gerard Connerson should remain automatically referred to the undersigned Magistrate Judge for further proceedings.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this 19ᵗʰ day of June, 2012.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**