UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **RYAN JOEL EDWARD STINSON** | **CIVIL ACTION** |
| **VERSUS** | **NO. 12-0404** |
| **DANIEL EDWARDS, JOYCE JACKSON, BRANDON PINION, CHAD HICKEY, JOSHUA JACKSON, ERIC ANDREWS, MRS. PAM DOE, JEROD DOE** | **SECTION "R"(4)** |

## REPORT AND RECOMMENDATION

The plaintiff, Ryan Joel Edward Stinson, filed a **Motion to Compel Discovery (Rec. Doc. No. 40)** seeking an order to compel the defendants to respond to his discovery requests. The defendants responded indicating that the motion is moot because they forwarded their responses to Stinson contemporaneously with the filing of their opposition. Rec. Doc. No. 43. The motion and this matter were referred to a United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to **28 U.S.C. § 636(b)(1)(B) and (C), § 1915e(2), and § 1915A**, and as applicable, **42 U.S.C. § 1997e(c)(1) and (2)**. Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing.

### I.   Factual and Procedural Background

####   A.   Original Complaint

Stinson was a pretrial detainee housed in the Tangipahoa Parish Jail ("TPJ") at the time of the filing of the complaint. He filed this *pro se* and *in forma pauperis* complaint pursuant to 42

U.S.C. § 1983 against the defendants, Sheriff Daniel Edwards, Warden Joyce Jackson, Assistant Warden Brandon Pinion, Sergeant Chad Hickey, Deputy Joshua Jackson, Deputy Eric Andrews, Sergeant Pamela Ricard, and Deputy Gerard Conerson, alleging the improper use of excessive force against him on February 6, 2012.

Stinson alleges that, on February 6, 2012, Sergeant Ricard and Deputies Jackson, Andrews, and Conerson entered his cell and beat him.  He claims that the officers told him that Warden Jackson and Assistant Warden Brandon Pinion told them to do it.  He also alleges that the officers busted his lip and injured his right eye until it was swollen shut.  They also injured his neck and caused numerous abrasions.

Stinson further states that he told Sergeant Hickey about the incident and that he was in pain.  He claimed that he handed Sergeant Hickey a completed administrative grievance form.  Stinson claims that Sergeant Hickey tore it up.  The Sergeant also allegedly threatened to beat him and pushed him in the face.

As relief, Stinson requests that the officers involved be disciplined, that he be provided with medical attention, and that no retaliation be taken against him.  He also seeks $1 million in damages for pain and suffering, and that costs be assessed to the defendants.

**B.**     **Supplemental Complaint**

In his supplemental complaint, Stinson alleged that since the filing of his original complaint, he was denied access to a law library, medical assistance, and due process, and he was beaten on February 24, 2012, by the defendants.  He alleges that he was not given a disciplinary hearing regarding the disciplinary charges placed against him after the February 6, 2012 incident.  He claims

that Assistant Warden Pinion told him that he did not need to have a hearing, since he already received his punishment when he was beaten.

Stinson also alleges that, on February 24, 2012, Deputy Jackson and another deputy entered his maximum security cell, A-33, at around 6:10 a.m. and beat him for more than 20 minutes.  This caused him to suffer severe pain, bruising, and lacerations.  Stinson claims that he tried to get another inmate to call his family for him, but the inmate was unable to do so.  Later, between 10:00 a.m. and 11:00 a.m., Deputies Conerson and Jackson and two other deputies returned to his cell.  These officers beat, kicked, and punched him in the body, face, and head.  They also shoved Stinson's face in the toilet stating that they would kill him.  He claims that he suffered broken ribs and was blinded in his left eye.  He also suffered lacerations to his head.

Stinson alleges that other inmates in cell A-2 saw what was going on, and they called his aunt, Mamie Slaughter.  He claims that his aunt called his mother, Josephine Barlow, and his brother, Derrick Stinson.  His family members tried to call the jail, but by that time the beatings had stopped.  He was left on the floor of his cell bleeding and in severe pain.  He asked to be sent to a doctor, but his requests were refused.

Stinson further alleges that he remained in his cell from February 24 through February 27, 2012, when he was taken to the booking area for his insulin shot.  The nurse noticed his face and asked what happened.  She examined him and determined that his ribs were probably broken and confirmed that he could not see out of his left eye.  She also told him that the lacerations to his head could not be stitched because too much time had passed.  She told him he would have to wait to heal and she gave him ibuprofen.  She also had him placed on suicide watch in cell E-17.

He remained there until March 7, 2012, during which time he did not receive any further medical attention. On that day, he was moved to maximum security for 60 days, and he was asked by Deputy Andrews to sign a disciplinary report regarding the incident on February 24, 2012. Stinson claims that he told the officer the contents of the report were fabricated. Deputy Andrews told him he was only there to get his signature and that he was not entitled to a disciplinary hearing or a copy of the disciplinary board report. Stinson alleges that he told Deputy Andrews that he wanted to appeal the disciplinary charge, and he was told that there was no appeal process. Stinson advised the deputy that he would send an appeal request to prison officials on a request form. Stinson also alleges that Deputy Andrews told him that he was not entitled to use the law library since he was not a DOC or federal prisoner.

As additional relief, Stinson requests that the deputies involved be disciplined, that he be moved to a safe facility, that he be granted a temporary restraining order to avoid harm and retaliation against him, and that he receive proper medical attention. He also requests $1 million for pain and suffering and loss of vision in his left eye. He also asks that he be placed in protective custody in cell E-16.

### C.   *Spears* **Hearing**

On March 8, 2012, the Court conducted a hearing pursuant to *Spears v. McCotter*[1] with the plaintiff participating by conference telephone call.[2] Stinson testified that he was a pretrial detainee awaiting trial on charges of burglary, theft and resisting arrest. He further stated that, on February

---

[1] 766 F.2d 179 (5th Cir. 1985). The purpose of the *Spears* Hearing is to ascertain what it is the prisoner alleges occurred and the legal basis therefore. The information elicited at the hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e). *Wilson v. Barientos*, 926 F.2d 480, 482 (5th Cir. 1991).

[2] Rec. Doc. No. 15. The plaintiff was sworn prior to testifying. The hearing was digitally recorded.

6, 2012, he was sharing a cell with Ralph Wood Jr. and Charles Williams. He stated that Williams began to beat on the cell door. One of the officers came to the cell to ask who was beating on the door. Stinson admitted that he regularly engaged in such behavior, so the officer assumed it was he who had beaten on the door. He told the officer that it was not him, but the officer ordered him to pack his things. At this time, Deputy Andrews, Deputy Conerson, Warden Jackson, Deputy Dubroc, and Sergeant Ricard also came to the cell. Warden Jackson and Sergeant Ricard went out of the cell to talk to Deputy Conerson and the others. Deputy Conerson returned to the cell and told Stinson to prepare for what was going to happen next. He called Deputy Jackson in and Jackson began to punch Stinson. The blood from the back of his head is still on the cell wall. Deputy Dubroc tried to get Jackson to stop, but Sergeant Ricard and Deputy Conerson urged Jackson to keep on beating him to teach him a lesson.

   He was moved to maximum security. He claims that he told Sergeant Hickey about the incident and that he needed medical attention. Sergeant Hickey reportedly refused to help and pushed Stinson to the floor of the cell. Stinson stated that he thereafter filed an administrative grievance with the jail on the required form, and they refused to answer it. Instead, he received a copy of a disciplinary write-up against him from the February 6, 2012 incident. Stinson explained that "they" told him they would not answer his ARP complaint. He stated that the ARP system means simply that, when you filed a complaint, sometimes you get to talk to the sergeant and you get an answer. Sometimes, they do not answer the complaint. In his case, he believes that the prison officials heard him ask Charles Williams, who was moved out of the cell later that day, to sign an affidavit as a witness about what happened. After he filed his ARP complaint form, he received a disciplinary board report charging him with defiance, disobedience and disrespect. The report was

dated February 6, 2012, and was signed by Deputy Jackson. Stinson complained that he never went before a disciplinary board; he indicated that they do not do disciplinary hearings at the jail. The inmates just receive a write up and a sentence is imposed.

Stinson stated that Deputy Andrews is the head of security. He sued Andrews because he was present when Jackson beat him, and he did not try to intervene or stop it. He repeated that only Deputy Dubroc tried to stop Jackson.

Stinson sued Deputy Conerson, who was Shift Sergeant, who urged Jackson to keep punching him. Conerson also came back into the cell to tell Stinson that he was about to be beaten, and then he called Jackson in to beat Stinson. Sergeant Ricard, who was also present, was shift supervisor over Conerson. She also allegedly encouraged Jackson to continued beating Stinson.

Stinson stated that Deputy Dubroc told him that Assistant Warden Pinion and Warden Jackson instructed the deputies to beat Stinson anytime something happened. This is why Stinson sued these defendants.

Stinson also sued Sheriff Edwards, because he is the employer of the named defendants. He indicated that his brother tried to call the sheriff, and he refused to discuss anything with him. Stinson conceded that Sheriff Edwards did not do anything to cause the beating; he is named solely as the employer of the other defendants.

Stinson further testified that, on February 24, 2012, he was involved in another altercation with Deputies Conerson and Jackson and two other deputies. He claims that they showed up at his cell and beat him in the eye, chest, and head. As a result, he lost vision in his left eye from the blood that has accumulated in the eye. The nurse told him that his ribs were broken, but there was no treatment to do for it. He has not been taken for any other medical treatment.

He also stated that his family has tried to get him help and to find him a lawyer to no avail. He also claims that he tried to file an ARP about this incident, but "they" refused to accept it when he tried to hand it to them. He also stated that he has received disciplinary write-ups arising from the February 24 incident.

As relief, he stated that he wants protection for his life and compensation for his pain and suffering and for the loss of vision in his left eye.

### D.     Current Status of the Case

On April 24, 2012, the defendants filed a Motion to Dismiss (Rec. Doc. No. 23) seeking dismissal of Stinson's claims for failure to exhaust administrative remedies as required by 42 U.S.C. § 1997e. On June 20, 2012, the undersigned issued a Partial Report and Recommendation (Rec. Doc. No. 36) in which it was recommended that the defendants' motion be denied in part without prejudice with respect to Stinson's § 1983 claims of excessive force, failure to protect, and denial of medical care arising out of the February 6, 2012 incident. The Court also recommended that the motion be granted in part with respect to Stinson's supplemental claims of denial of access to a law library and excessive force and denial of medical care arising from the February 24, 2012 incident and that those claims be dismissed without prejudice for failure to exhaust administrative remedies. The court also recommended that Stinson's § 1983 claims against Sheriff Edwards and Sergeant Chad Hickey be dismissed with prejudice as frivolous and for failure to state a claim for which relief can be granted pursuant to 28 U.S.C. § 1915(e), § 1915A, and 42 U.S.C. § 1997e.[3]

On July 24, 2012, the District Judge adopted the partial report and ordered that the Motion to Dismiss be granted in part and denied in part as recommended, thereby dismissing Stinson's

---

[3]The Court also recommended that Stinson's Motion for Writ of Mandamus (Rec. Doc. No. 6) and Motion for Temporary Restraining Order (Rec. Doc. No. 21) also be denied.

claims arising out of the alleged February 24, 2012 incident.[4]  The Court also dismissed with prejudice Stinson's § 1983 claims against Sheriff Edwards and Sergeant Hickey as frivolous.

In the meantime, on June 28, 2012, the defendants filed a Motion for Summary Judgment seeking dismissal for failure to exhaust as to the remaining § 1983 claims of excessive force, failure to protect, and denial of medical care arising from the February 6, 2012, incident against Warden Jackson, Assistant Warden Pinion, Deputy Jackson, Deputy Andrews, Sergeant Ricard, and Deputy Conerson.  On February 1, 2013, the undersigned issued a Report and Recommendation recommending that the motion be denied based on the existence of genuine issues of material facts. On March 18, 2013, the District Judge adopted the Report and ordered that the Motion for Summary Judgment be denied.

As will be discussed, Stinson has failed to maintain contact with the Court and provide the Court with his current address.  The Court will address the plaintiff's failure to prosecute this case which will render moot his Motion to Compel.

## II.    **Standard of Review Under Fed. R. Civ. P. 41(b)**

Rule 41(b) of the Federal Rules of Civil Procedure specifically provides that a court may, in its discretion, dismiss a plaintiff's claim for failure to prosecute or for failure to comply with the Federal Rules of Civil Procedure or any order of the court.  A Rule 41(b) dismissal is considered an adjudication on the merits. Fed. R. Civ. P. 41(b).  In determining whether to dismiss a claim, courts have traditionally considered the extent to which the plaintiff, rather than his counsel, has been responsible for any delay or failure to comply with a rule or order.  *See, e.g.*, *Markwell v. Cnty. of Bexar*, 878 F.2d 899, 902 (5th Cir. 1989); *Price v. McGlathery*, 792 F.2d 472, 474-75 (5th Cir.

---

[4]Rec. Doc. No. 39.

8

1986); *Silas v. Sears, Roebuck & Co.*, 586 F.2d 382, 385 (5th Cir. 1978); *Ramsay v. Bailey*, 531 F.2d 706, 708-09 (5th Cir. 1976).

In this case, the plaintiff is without counsel and is responsible for the prosecution of his case. A *pro se* litigant is not exempt from compliance with relevant rules of procedural and substantive law. *Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir. 1981); *Beard v. Experian Info. Solutions Inc.*, 214 F. App'x 459, 462 (5th Cir. 2007). A pro se litigant who fails to comply with procedural rules has the burden of establishing excusable neglect, which is a strict standard requiring proof of "more than mere ignorance." *See Kersh v. Derozier*, 851 F.2d 1509, 1512 (5th Cir. 1988) (quotation omitted); *Birl*, 660 F.2d at 593.

## III.    Analysis

The record reflects that the plaintiff filed his Motion to Compel on October 15, 2012, as an ex parte motion.[5] The Court thereafter issued an Order on January 23, 2013, setting the Motion for submission without oral argument for February 6, 2013 to allow the defendants the opportunity to respond.[6] A copy of the Order was mailed that same day by the Clerk of Court to Stinson at his address of record at the Tangipahoa Parish Jail. On January 31, 2013, the envelope containing the Court's January 23, 2013 Order was returned to the Clerk of Court marked "Return to Sender" and stamped "RETURN TO SENDER REFUSED UNABLE TO FORWARD."[7] The returned mail was entered on the docket February 1, 2013.

---

[5] Rec. Doc. No. 40; *see also* Rec. Doc. Entry 41.

[6] Rec. Doc. No. 42.

[7] Rec. Doc. Entry 45.

9

Earlier that same day, the Court issued the Report and Recommendation addressing the defendants' Motion for Summary Judgment.[8]  A copy of the Report was mailed that same day by the Clerk of Court to Stinson at his address of record at the Tangipahoa Parish Jail.  On February 13, 2013, the envelope containing the Report was returned to the Clerk of Court stamped "RETURN TO SENDER INMATE NOT HERE" and "RETURN TO SENDER REFUSED BY T.P. JAIL."[9]

The District Judge issued an Order on March 18, 2013, adopting the Report and Recommendation and denying the Motion for Summary Judgment.[10]  A copy of the Order was mailed that same day by the Clerk of Court to Stinson at his address of record at the Tangipahoa Parish Jail.  On March 27, 2013, the envelope containing the Order was returned to the Clerk of Court stamped "RETURN TO SENDER INMATE NOT HERE" and "RETURN TO SENDER UNCLAIMED UNABLE TO FORWARD."[11]

The Court's orders were mailed to Stinson at the only address he has provided to the Court since the filing of his Complaint.  According to the returned envelopes, Stinson is no longer housed in the Tangipahoa Parish Jail, and he has failed to provide the Court with his current contact information as required by L.R. 11.1.  Stinson was made aware of his continuing obligation to keep the Court informed of his whereabouts as reflected in paragraph VI on the last page of his form Complaint, where he signed the Plaintiff's Declaration.[12]

---

[8] Rec. Doc. No. 44.  The Report and Recommendation was filed and entered before the returned mail.

[9] Rec. Doc. Entry 46.

[10] Rec. Doc. No. 47.

[11] Rec. Doc. Entry 48.

[12] Rec. Doc. No. 1, p. 6.

Contrary to these mandates, Stinson has not notified the Court of his current address, and he otherwise has not contacted the Court about his case since the Motion to Compel was filed in October of 2012. In accordance with L.R. 41.3.1, Stinson's failure to provide his current address within 35 days of the Court's mail having been returned is cause for dismissal of his complaint for failure to prosecute.

Stinson has not made the necessary effort to prosecute this case. Accordingly, dismissal with prejudice of his complaint is proper under Fed. R. Civ. P. 41(b) for his failure to prosecute. Because his remaining claims are being dismissed, his Motion to Compel Discovery is moot.

## IV. Recommendation

It is therefore **RECOMMENDED** that Stinson's **Motion to Compel Discovery (Rec. Doc. No. 40)** be **DISMISSED** as moot.

It is further **RECOMMENDED** that Stinson's 42 U.S.C. § 1983 claims of excessive force, failure to protect, and denial of medical care arising from the February 6, 2012, incident against Warden Jackson, Assistant Warden Pinion, Deputy Jackson, Deputy Andrews, Sergeant Ricard, and Deputy Connerson be **DISMISSED WITH PREJUDICE** for failure prosecute pursuant to Fed. R. Civ. P. 41(b).

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from

a failure to object. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1430 (5th Cir. 1996).[13]

                              New Orleans, Louisiana, this 5th day of June, 2013.

                              **KAREN WELLS ROBY**
                              **UNITED STATES MAGISTRATE JUDGE**

---

[13] *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.